# KEAO KAHUMUHUMU KAMAHALO *v.* WILLIAM J. COELHO, ET AL.

## No. 1120.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.
HON. C. W. ASHFORD, JUDGE.

ARGUED FEBRUARY 27, 1919.                    DECIDED MARCH 22, 1919.

COKE, C. J., EDINGS, J., AND CIRCUIT JUDGE HEEN IN PLACE OF KEMP, J., ABSENT.

EVIDENCE—*judge's right to call witnesses.*

    A judge may call witnesses to supplement the evidence produced by the parties when he believes this necessary.

SAME—*experts, qualification.*

    The question whether a witness is qualified as an expert is largely within the discretion of the trial judge.

### OPINION OF THE COURT BY EDINGS, J.

The petitioner-appellee instituted a suit in the circuit court of the first circuit to compel the defendant-appellant, William J. Coelho, in his individual capacity and as trustee of William J. Kuniakea Coelho, a minor, to reconvey to petitioner certain realty situate in the City and County of Honolulu, which petitioner claims the defendant William J. Coelho holds in trust for her, having

agreed to reconvey the said property to her upon the re-
payment of certain moneys advanced by the said Coelho
for the petitioner as part of the purchase price of said land
to be paid to the Territory. The respondent Coelho in his
answer to petitioner's bill denied that he held such prop-
erty in trust for said petitioner or that he ever agreed to
reconvey the property to the petitioner upon the repay-
ment of the sum of money advanced by him for the pur-
chase price of the said property, but on the contrary
alleged that on the 15th day of August, 1912, the Territory
of Hawaii sold said property to petitioner under a sales
agreement for the sum of $584.64, $116.60 to be paid in
cash and the balance in four equal annual payments; that
petitioner was indebted to said Coelho in the sum of $465,
and, being unable to pay the second instalment to the Ter-
ritory on the purchase price of said land, suggested to said
Coelho that she (petitioner) assign the agreement she had
with the Territory to purchase said land to him, the said
Coelho, in trust for his son in consideration of the said
Coelho releasing her from the payment of the said $465,
which she, the petitioner, had borrowed from the said
Coelho, and that in pursuance of said request and under-
standing he, the said Coelho, did release petitioner from
the payment of said debt of $465 and the petitioner did
assign her interest in said agreement to the said Coelho as
trustee for his son, William J. Kuniakea Coelho; that
thereafter he, the said Coelho, made the payment due under
said contract to the Territory, as trustee for his said son,
and that after all of said payments had been made to the
Territory under said sales agreement by him as trustee for
his said son, the Territory issued a patent to said property
to him as trustee for his said son, which property he now
holds under said patent as such trustee; that he (Coelho)
did not at any time agree to reconvey said land to pe-
titioner upon the repayment to him of the sum of

money paid by him to the Territory on the purchase price of said property, but that on the contrary the said assignment was an unconditional transfer by petitioner of said property to him (Coelho) as trustee for his said son, for a valuable consideration. Thereafter a trial was had and a decree entered, adjudging and decreeing that the said William J. Coelho as ostensible trustee for his son, William J. Kuniakea Coelho, convey to the petitioner all the right, title and interest which he now holds in his capacity as ostensible trustee for said William J. Kuniakea Coelho in and to the lands described in the bill of complaint (describing the same) and that said William J. Coelho pay to said petitioner the sum of $47.17, the same being the difference between the amount due under said mortgage to the Mutual Building & Loan Society of Hawaii, Limited, and the amount paid by said William J. Coelho to the commissioner of public lands, with interest thereon, and that said petitioner do within thirty days from the time when the decree shall become final pay said Mutual Building & Loan Society of Hawaii, Limited, the principal and interest due under said mortgage in the sum of $600.47 together with the expenses in connection with the attempted foreclosure thereof in the sum of $93.75, and that respondent pay the costs taxed at $75.50, from which said decree an appeal was duly perfected by the respondent to this court.

The evidence produced by the parties on the trial was exceedingly voluminous, and, as usual, exceedingly contradictory, but it was the sole function of the trial judge to determine the preponderance of the evidence and the credibility to be attached to the testimony of any and all witnesses. Of course when a trial judge suffers improper or irrelevant and prejudicial evidence to be introduced and does not specifically and positively disregard and repudiate such evidence in his findings of fact, his decision

or decree is reviewable as an error of law by this court. That the trial judge admitted evidence of this character and was influenced in his decree by this irrelevant and improper evidence is the contention of the respondent-appellant, predicated upon the following proceedings and testimony:

First. The respondent-appellant (Coelho) testified that he had loaned to the petitioner certain sums of money and when asked where he had obtained this money to make the loan replied that he had obtained $600 from one Antone Souza, a resident of Maui. After the submission of the case by both petitioner and respondent the trial judge, after notice to the parties, subpoenaed Souza to appear before him and upon an examination of the said Souza, conducted in the presence of the counsel for both petitioner and respondents, the said Souza testified in substance that he had paid Coelho the $600, testified to by him (Coelho), and various other sums. The introduction of this testimony can certainly not be considered prejudicial to the respondent, being in corroboration of his own testimony and to his own advantage, and whether or not the proceeding was irregular, the error, if any, was not only harmless but actually beneficial to respondent.

Second. The respondent testified in substance that he had at various times loaned petitioner divers sums of money and produced two receipts purporting to have been signed by petitioner for the sum of $175 and $50 respectively, which said receipts were received in evidence and marked exhibits 8 and 10. After the case had been closed and submitted the trial judge, at his own instance, summoned to appear before him one R. W. Breckons, Esq., to testify as an expert as to the genuineness of the signatures to said exhibits 8 and 10, giving notice of such fact to the parties, and on the examination of said Breckons permitting the usual cross-examination. The testimony of

Mr. Breckons was objected to at the time by respondent who objected to his testifying as an expert in handwriting for the reason that there "is no foundation laid to show that he is an expert on handwriting," and also to Mr. Breckons testifying "for the reason that the case was closed and submitted to your honor, and it should not be reopened at this time." Both objections were overruled, and after an examination by the judge as to his qualifications to testify as an expert, and cross-examination by counsel, he testified, among other things, that in his opinion the signature to the exhibit 8 and also the signature to the exhibit 10 were not genuine but were forgeries. The second phase of this objection will first receive our consideration.

"The judge's right to call forth evidence has been at times questioned by the bar. That he has no burden of doing so is plain in the law; but that he has no right to cause the evidence produced by the parties to be supplemented, when he believes this necessary, has never been conceded." Sec. 2484 Wigmore on Evidence. In *Coulson* v. *Disborough*, 2 L. R. Q. B. 316, 318, Lord Esher, M. R. says: "If there is a person whom neither party to an action chooses to call as a witness, and the judge thinks that that person is able to elucidate the truth, the judge in my opinion is himself entitled to call him; and I cannot agree that such a course has never been taken by a judge before." In *Selph* v. *State*, 22 Fla. 537, 545, the court says: "We do (not) deny the right of the presiding judge, when prompted by sound discretion, to call and examine witnesses of his own accord, when the interests of justice demand it, whether the witness be for or against the State, and in such a case to permit counsel on both sides to cross-examine such witness." In the case of *Thorn* v. *Worthing Skating Rink Co.* 6 Ch. D. 415 note, 416 note, Jessel, M. R., says: "I have hitherto abstained from exer-

cising the power which, no doubt, the court has of selecting an expert to give evidence before the court." In the case of *Grigsby* v. *Clear Lake Water Co.,* 40 Cal. 396, 405, Temple, J., delivering the opinion of the court, in commenting upon expert testimony, remarks: "Ordinarily, it is true, witnesses testify only as to facts, leaving it to the jury to draw their conclusions, but upon matters of science and questions requiring peculiar skill an exception is made. These witnesses ought, perhaps, to be selected by the court, and should be impartial as well as learned and skilful. A contrary practice, however, is now probably too well established to allow the more salutary rule to be enforced." Lord Mansfield, in *Folkes* v. *Chadd,* 99 Eng. Rep. 589, 590, 3 Dougl. 157, commenting upon the admissibility of expert evidence, remarks: "In matters of science no other witnesses can be called. An instance frequently occurs in actions for unskilfully navigating ships. The question then depends on the evidence of those who understand such matters; and when such questions come before me, I always send for some of the brethren of the Trinity House."

From the foregoing authorities it is perceptible that courts have from the earliest period exercised the right to call in experts to aid them in their deliberations and this right we concede.

As to the right of the court to assume the general superintendence and control of the litigation before it, while we are not inclined to deny the power in *toto,* still less are we inclined to encourage its exercise.

The final objection which we are called upon to consider is the admission of the testimony of Mr. Breckons as an expert. Upon this subject we hold the better rule, and the one which we adopt, to be: "The qualifications of a witness as to knowledge and capacity must be established, as facts, to the reasonable satisfaction of the trial court,

whose finding will not be reviewed except in case of manifest mistake," or abuse of discretion. 17 Cyc. 31 and cases cited. "The qualification of an expert witness is a preliminary one for the trial court, whose decision is conclusive, unless it appears upon the evidence to have been erroneous or founded upon an error of law." *Hartman* v. *Muehlebach,* 64 Mo. App. 565. "The question whether a witness is qualified to testify as an expert is largely within the discretion of the trial judge." *Mutual Fire Ins. Co.* v. *Alvord,* 61 Fed. 752.

That there was in this case a sufficient foundation laid for the introduction of the testimony of Mr. Breckons as an expert is sustained by numerous decisions. It appears that Mr. Breckons had for many years made a special study of handwriting and had investigated very many cases involving the genuineness of signatures. "A person whose business for fifteen years required him frequently to make comparisons of handwritings is competent to testify as an expert in regard thereto, though he testifies that he is not an expert in the sense of making it his business." *Christman* v. *Pearson,* 100 Ia. 634. A witness who has for many years been engaged in a business which requires him to compare signatures and determine their genuineness is qualified to testify as an expert on the issue of the genuineness of a signature, though he has not made a special study of handwriting. *Wheeler & Wilson Mfg. Co.* v. *Buckhout,* 60 N. J. L. 102. "A witness who testifies that he has had much experience in comparing handwriting from many years' service as a detective and chief of police is competent to testify as an expert." *U. S. Health & Accident Ins. Co.* v. *Hill,* 62 So. 954. "It is within the discretion of the trial court to allow bank officers to testify as experts as to handwriting and the difference in inks used in writing and signing a paper." *Savage* v. *Bowen,* 49 S. E. (Va.) 668.

We do not find anything in the present case to demand the corrective interposition of this court.

The decree appealed from is affirmed.

*J. Lightfoot* for petitioner.

*W. B. Pittman* (*Andrews & Pittman* on the brief) for respondents W. J. Coelho and W. J. K. Coelho, a minor.